UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JORGE LUIS CARRILLO COSTA,

      Petitioner,

v.                                                        Case No.:  2:26-cv-782-SPC-NPM

PAMELA JO BONDI *et al.*.

      Respondents,

_____/

## <u>OPINION AND ORDER</u>

Before the Court are Jorge Luis Carrillo Costa's Amended Petition for Writ of Habeas Corpus (Doc. 3) and the federal government's response (Doc. 7). For the below reasons, the Court grants the petition.

### A. Background

Carrillo Costa is a native and citizen of Cuba who entered the United States on May 12, 2022.  The Department of Homeland Security ("DHS") issued a notice to appear ("NTA") and released Carrillo Costa under an order of recognizance.  He timely applied for asylum, he has work authorization through 2031, and he has no criminal record.

Carrillo Costa reported to immigration court in Miami for a hearing on January 6, 2026.  DHS moved to dismiss the proceedings, and an immigration judge granted the motion.  When Carrillo Costa left the courtroom,

Immigration and Customs Enforcement ("ICE") arrested him and served him a Notice and Order of Expedited Removal.

Carrillo Costa claims his detention violates the Fifth Amendment's Due Process Clause, contradicts the government's prior decisions to allow him into the country to seek lawful status, and serves no legitimate purpose. The government argues the expedited removal order makes detention mandatory.

## B. Legal Framework for Expedited Removal

The Immigration and Nationality Act ("INA") establishes two procedures for removing noncitizens from the country. The first process—sometimes called a section 240 proceeding—begins when DHS issues the noncitizen a NTA. It involves an evidentiary hearing before an immigration judge, and it provides the noncitizen an opportunity to apply for asylum. Noncitizens seeking asylum are entitled to due process under the Fifth Amendment. DHS may release the noncitizen into the country on parole while the process plays out, but only if the noncitizen demonstrates "that the release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceedings." 8 C.F.R. § 1236.1(c)(8).

Expedited removal is the second process. It allows immigration officers to remove noncitizens "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability in two

ways.  First, noncitizens may be eligible for expedited removal "only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission."  *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 61, 2025 WL 2192986, at *5 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)). "Among that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."  *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(iii)).

On January 23, 2025, Acting DHS Secretary Benjamine Huffman issued a memorandum instructing immigration officials to consider the expedited removal of "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied[.]"  Benjamine C. Huffman, Acting DHS Secretary, *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025).  The next day, DHS published a notice expanding the application of expedited removal.  Office of the Secretary, DHS, *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139.

In its implementation of the new policy, "the Government began targeting for expedited removal people already in section 240 removal

proceedings, many of whom are pursuing asylum and other collateral relief."

*Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 152-53, 2025 WL

2494908, at *5 (D.D.C. 2025).  The D.C. District Court described a common

pattern:

> [W]ith DHS first moving orally (without any advance notice) to dismiss
> the individual's pending section 240 proceedings, then arresting the
> individual at the courthouse immediately upon the dismissal of their
> section 240 proceedings, and then, finally, placing the individual in
> expedited removal proceedings through which they can be deported far
> more quickly, and with far less process, than they would have been in
> section 240 proceedings.

*Id.*

### C. Due Process

The Fifth Amendment guarantees that "[n]o person shall be…deprived

of life, liberty, or property, without due process of law[.]"  U.S. Const. amend.

V.  The clause "applies to all 'persons' within the United States, including

aliens, whether their presence here is lawful, unlawful, temporary, or

permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  It is thus "well

established that the Fifth Amendment entitles aliens to due process of law in

deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and

calls for such procedural protections as the particular situation demands."

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1976).  Courts looks to three factors

when considering what process is due in a given situation: (1) "the private

4

interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Carrillo Costa's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. DHS considered Carrillo Costa's circumstances in 2022 and determined he should be released on his own recognizance while he seeks lawful status. Since then, Carrillo Costa applied for asylum and kept his record clean, and he proved he is no flight risk by attending his immigration hearing.

ICE arrested and detained Carrillo Costa without any new or additional information suggesting he is a threat to public safety or a flight risk. What is more, ICE clearly exceeded its statutory authority when it designated him for expedited removal after dismissing his section 240 proceeding. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (excluding aliens who have lived in the United States for more than two years after being paroled into the country from the class eligible

for expedited removal). The procedure ICE used did not give Carrillo Costa an opportunity to challenge the legal basis for his detention or its necessity.

What is more, the Court recognizes significant value in additional safeguards, like the ones provided in section 240 removal proceeding. Those safeguards ensure immigration detention serves its statutory purposes and is used in accordance with the laws enacted by Congress.

Third, the government has not established any legitimate interest in Carrillo Costa's continued detention. Immigration detention has two statutory goals: to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690. Carrillo Costa's detention serves neither purpose. The Border Patrol officer who considered his circumstances in 2022 determined that he should be released into the country, and he has since remained out of trouble, applied for asylum, and participated in his removal proceedings.

The Court finds that ICE violated Carrillo Costa's right to due process by subjecting him to mandatory detention without reasonable notice and a meaningful opportunity to be heard. *See Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 160, 2025 WL 2494908, at *17 (D.D.C. 2025) ("In short, the expedited removal process hardly affords individuals any opportunity, let alone a 'meaningful' one, to demonstrate that they have been present in the United States for two years."); *see also United States v. Smith*, 30 F.4th 1334,

6

1338 (11th Cir. 2022) ("the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error" (cleaned up)).

### D. Conclusion

For the reasons stated above, the Court finds Carrillo Costa's detention violates his right to due process under the Fifth Amendment.

Accordingly, it is hereby **ORDERED**:

1.      The respondents shall release Carrillo Costa from custody within 24 hours of this Order.  The respondents shall allow Carrillo Costa telephone access so he can arrange his transportation from the detention facility.

2.      The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on April 1, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record

7